IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DICK PATRICK STUDIOS, INC., | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 3:21-cv-26 |
| HARTFORD LLOYDS INSURANCE COMPANY, | § § § § | **JURY DEMANDED** |
| Defendant. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Dick Patrick Studios, Inc., Plaintiff herein, files Plaintiff's Original Complaint against Defendant Hartford Lloyds Insurance Company, and, in support of its causes of action, Dick Patrick Studios, Inc. would respectfully show the Court the following:

## I.
## THE PARTIES

1. Plaintiff, Dick Patrick Studios, Inc., is a Texas corporation incorporated in the State of Texas with its principal place of business located at 8401 Sovereign Row, Dallas, Texas 75247.

2. Upon information and belief, Defendant Hartford Lloyds Insurance Company (hereinafter referred to as "Hartford"), was, and is at the date of this filing, a Connecticut insurer with its principal place of business located at One Hartford Plaza, Hartford, Connecticut 06155-0001. Hartford, therefore, is not a citizen of the state of Texas for diversity purposes. Hartford may be served via certified mail return receipt requested via its registered agent for service in the state of Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## II.
## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction of this cause of action under 28 U.S.C. § 1332.

4. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas, Dallas Division. The property at issue in this cause is in the Northern District of Texas, Dallas Division.

## III.
## FACTUAL BACKGROUND

5. Dick Patrick Studios, Inc. ("Patrick") is the named insured under a property insurance policy issued by Hartford identified as Policy 65SBAKG3534 ("Policy"). The Policy provided coverage for water damage to Patrick's property located at 8301 Sovereign Row, Dallas, Texas 75247 ("Property") for the term of the Policy during the time of the date of loss of October 23, 2019.

6. On or around October 23, 2019, Patrick discovered significant damage to the Property. Patrick duly reported the claim to Hartford upon discovery of the widespread damage. Hartford acknowledged receipt of the claim and commenced its investigation.

7. Hartford assigned Tara Haslock ("Haslock") to adjust the claim. Haslock retained EFI Global, Inc. ("EFI"), an engineering firm owned by the insurance claims management firm Sedgwick and exclusively hired by insurance carriers, to inspect the Property. Engineer Daniel Hillner ("Hillner") was assigned to investigate the loss. Even though EFI identified four plumbing leaks at the Property, EFI somehow determined that the foundation movement at Patrick's Property was not caused by a plumbing leak. Rather, EFI advised Hartford that the foundation movement is "the result of site-specific and environmental effects, specifically the large tree found off the

same perimeter of the building. This tree appears to have caused moisture withdrawals and soil shrinkage, resulting in downward movement of the slab." Furthermore, EFI advised, "Neither the recently identified sanitary waste system leaks (Leaks #1 through #4) nor the previously repaired sanitary waste system issues have contributed to differential foundation movement or cosmetic distress." EFI submitted its report on December 10, 2019. In summary, EFI identified four plumbing leaks, but summarily dismissed these leaks as being the cause of the foundation movement and instead blamed it all on a tree.

8.      Based on EFI's report, Hartford, through representative Haslock, issued correspondence dated December 17, 2019, denying Patrick's' claim in the entirety. As Haslock curtly explained, "After a review of the facts of loss and a thorough review of your policy, we must advise you that there is no coverage for this loss and we must respectfully deny your claim." Haslock, without ever personally inspecting the Property, blindly adopted Hillner's findings and informed Patrick the foundation movement was not caused by water damage.

9.      Patrick, faced with the reality it might receive $0 from its insurance company for the damage to its Property, turned to Anthony Cantrell ("Cantrell") of Abba Claims Consultants, LLC ("Abba"), to render an accurate estimate of the water-related damages to the Property. As expected after plumbing leaks of this scale, Abba documented and photographed extensive water damage to the interior of the Property. Cantrell determined the damage to the Property warranted replacement cost coverage of **$65,307.78** under the terms of the Policy. Mr. Cantrell's estimate and evaluation came equipped with photographs of the damage. Mr. Cantrell's estimate was submitted to Hartford on or around March 2, 2020.

10.     Additionally, Patrick hired the engineering firm CASA Engineering ("CASA") to evaluate the damages to the Property. Engineer David V. Day ("Day") inspected the Property on

January 27, 2020. After a thorough inspection of the Property, Day ultimately concluded, "The structure has undergone movement due to moisture changes in the subsurface soils. Current and past plumbing leaks have significantly affected the foundation at the office, lobby, and bathrooms causing cosmetic cracking in the walls and finishes." Day submitted his findings on February 11, 2020.

11. Despite being provided two separate opinions indicating the damage was, in fact, caused by the numerous plumbing leaks, Hartford remained steadfast in its denial and refused to consider the reports of Abba or CASA. On May 27, 2020, EFI issued correspondence refuting CASA's findings. EFI simply reiterated its findings contained in its original report and concluded the foundation movement was not caused by any of the four plumbing leaks. Hartford was aware of these leaks but willfully disregarded them in order to conduct its outcome-oriented investigation of Patrick's claim.

12. As a result of Hartford's improper denial, the Property's foundation continues to have issues, and it may end up needing to be repaired. According to Olshan Foundation Solutions, the cost to repair the foundation totals **$44,166**.

13. An adequate investigation of the foundation movement at the Property would have revealed significant water damage during the Policy period. Haslock, along with other Hartford personnel, failed to thoroughly review and properly oversee the work of the assigned claims representative and adjusters, including Haslock, ultimately approving an improper estimate and adjustment of Patrick's claim. Hartford misrepresented Patrick's damages were not caused by a covered cause of loss under the Policy, when the losses in fact were clearly extensive and caused by water leaks, which are covered causes of loss under the Policy.

14. Although Hartford and Haslock were aware of Patrick's clear and present water damage and the reported damage was covered by the Policy, they decided the claim should be denied without conducting a thorough and reasonable inspection of the damages. Haslock's inadequate investigation of the claim was relied upon by Hartford in this action and resulted in Patrick's claim being improperly undervalued, under scoped and not paid. After requesting Hartford reconsider its improper investigation and underpayment and consider the line-by-line estimate from a licensed public adjuster and the report of an engineer, Hartford simply reconfirmed its prior findings, conveniently deciding the damages were not caused by a covered cause of loss. Despite paying premiums for this very purpose, Patrick received zero dollars to perform the necessary repairs to its Property.

15. Hartford, along with its personnel, failed to thoroughly review and properly oversee the work of the assigned claims representative and adjusters, including Haslock, ultimately approving an improper adjustment of and an inadequate and improper estimate of Patrick's claim. Hartford misrepresented Patrick's damages were not covered when the losses in fact were clearly covered causes of loss during the Policy's period. Specifically, Hartford represented to Patrick that the damages to Patrick's Property were not caused by a covered cause of loss within the Policy period without proper investigation when, in fact, Hartford and Haslock knew, or with a reasonable investigation should have known, that the cost of repairs to all the damages was a clear covered loss. Further, the investigation exceeded the statutory mandated deadlines.

16. Together, Hartford and Haslock set out to deny properly covered damages. Because of this unreasonable investigation and failure to provide any coverage for the damages sustained, Patrick's claim was improperly adjusted, and Patrick was denied any payment to repair its Property. To this date, Patrick has yet to receive any payment under the insurance Policy.

## IV.
## CAUSES OF ACTION

17. Each of the foregoing paragraphs is incorporated by reference in the following:

**A.    Breach of Contract**

18. Hartford had a contract of insurance with Plaintiff. Hartford breached the terms of that contract by wrongfully denying the claim, and Plaintiff was damaged thereby.

**B.    Prompt Payment of Claims Statute**

19. The failure of Hartford to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code.

20. Plaintiff, therefore, in addition to Plaintiff's claim for damages, is entitled to statutory interest and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

**C.    Bad Faith/Deceptive Trade Practices Act ("DTPA")**

21. Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

22. Defendant violated Section 541.051 of the Texas Insurance Code by:

   (1) making statements misrepresenting the terms and/or benefits of the policy. As referenced above, Hartford mispresented coverage for water damage to the Property during the Policy period was a covered cause of loss and misrepresented to Patrick the coverage's terms.

23. Defendant violated Section 541.060 by:

   (1) misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

   (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear;

 (3) failing to promptly provide to Plaintiff a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

 (4) failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff; and

 (5) refusing to pay the claim without conducting a reasonable investigation with respect to the claim. As referenced above, Hartford failed to meet its statutory timelines governed by the Texas Insurance Code, failed to respond to multiple requests for information, failed to disclose information relied on its investigation, failed to conduct testing of the damage, failed to allocate damage occurring during the Policy, and improperly claimed no water damage was reported on the date of loss.

24. Defendant violated Section 541.061 by:

 (1) making an untrue statement of material fact;

 (2) failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made; and

 (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact. As referenced herein, Defendant misrepresented water damage that occurred during the Policy was not a covered loss, failed to provide requested information used to render its claim decision, and claimed the damage was not caused by a covered cause of loss without conducting a reasonable investigation.

25. At all material times hereto, Plaintiff was a consumer who purchased insurance products and services from Defendant.

26. Defendant has violated the Texas DTPA in the following respects:

   (1) Defendant represented that the agreement confers or involves rights, remedies, or obligations which it does not have, or involve, or which are prohibited by law;

   (2) Hartford failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed;

   (3) Hartford, by accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action as prohibited by Section 17.50(a)(1)(3) of the DTPA in that Hartford took advantage of Plaintiff's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Texas Insurance Code.

27. Defendant knowingly committed the acts complained of. As such, Plaintiff is entitled to exemplary and/or treble damages pursuant to the DTPA and Texas Insurance Code Section 541.152(a)-(b).

**D.  Breach of the Duty of Good Faith and Fair Dealing**

28. Defendant Hartford's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to Plaintiff.

29. Defendant Hartford's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, Defendant Hartford knew or should have known by the exercise of reasonable diligence that its liability was reasonable clear, constitutes a breach of the duty of good faith and fair dealing.

## KNOWLEDGE

30. Each of the acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

**E.  Attorneys' Fees**

31. Plaintiff engaged the undersigned attorney to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

32. Plaintiff is entitled to reasonable and necessary attorney's fees pursuant to Texas Civil Practice and Remedies Code Sections 38.001-38.003 because Plaintiff is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

33. Plaintiff further prays that Plaintiff be awarded all reasonable attorneys' fees incurred in prosecuting Plaintiff's causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

## V.
## CONDITIONS PRECEDENT

34. All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by Defendant.

## VI.
## PRAYER

35. WHEREFORE, PREMISES CONSIDERED, Dick Patrick Studios, Inc. prays that, upon final hearing of the case, it recover all damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Dick Patrick Studios, Inc. be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Dick Patrick Studios, Inc. may show itself to be justly entitled.

Respectfully submitted,

*/s/ Matt Montgomery*
Jeffrey T. Embry
Bar Number: 24002052
Matt Montgomery
Bar Number: 24041509
Hossley Embry, LLP
4733 Don Drive
Dallas, Texas 75247
Telephone No. 214-390-2349
matt@hossleyembry.com

**ATTORNEYS FOR PLAINTIFF**